**Dennis BONFIGLIO, Petitioner-Appellee,**

v.

**John HODDEN, Superintendent, Federal Correctional Institution, Ray Brook, New York, Respondent-Appellant.**

No. 1120, Docket 84–2342.

United States Court of Appeals, Second Circuit.

Argued April 19, 1985.

Decided Aug. 8, 1985.

Timothy D. Junkin, Washington, D.C. (Asbill, Junkin & Myers, Chtd., Washington, D.C., of counsel), for petitioner-appellee.

John F. Savarese, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Stuart E. Abrams, Asst. U.S. Atty., New York City, of counsel), for respondent-appellant.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal by the government from an order of the United States District Court for the Southern District of New York (Broderick, Judge) which granted Dennis Bonfiglio's petition for a writ of habeas corpus, pursuant to 28 U.S.C. section 2255, and vacated his federal firearms conviction. The ground relied upon was that Bonfiglio had an earlier felony conviction, which formed a predicate for one federal firearms count to which Bonfiglio pleaded guilty herein, but which had since been modified nunc pro tunc to a misdemeanor. Therefore, the district court reasoned, there existed no valid predicate with respect to that firearms count, thus rendering the plea tainted, and so the writ was granted. For the reasons stated below, we reverse and remand.

## BACKGROUND

On September 2, 1969, Bonfiglio pleaded guilty in the United States District Court for the District of Columbia to a felony charge of escape, 18 U.S.C. § 751(a), and was sentenced to a term of two years probation by William B. Bryant, *Judge*. This conviction resulted from Bonfiglio's escape on October 31, 1967, from the Lorton Re-

formatory, a federal facility. Significantly, it also formed the predicate for one of Bonfiglio's federal firearms violations herein.

The government's evidence against Bonfiglio in this firearms case was developed at the trial of a co-defendant, Kevin Eybergen; it tended to show that in August 1980, Bonfiglio and Eybergen purchased a total of ten riot shotguns and assault rifles from a firearms dealer in Greenwich, Connecticut.[1] For each purchase, Bonfiglio filled out a federal firearms form falsely identifying himself as "Dennis Goodson" of 118 Staunton Street, Yonkers, New York, and presented a false driver's license to verify his identity. Bonfiglio also stated on the form that he had never been convicted of a crime punishable by more than one year in jail, despite his 1969 plea of guilty to a charge of felony escape, 18 U.S.C. § 751(a), for which the maximum sentence possible was five years imprisonment. After obtaining the weapons, Bonfiglio and Eybergen turned them over to a narcotics dealer who had provided the money to buy the guns and who paid them for making the purchases.

On the date set for Bonfiglio's trial, he appeared before Judge Broderick and pleaded guilty to three counts of the indictment. The counts to which Bonfiglio pleaded guilty involved: the making of false statements and exhibiting false identification to a firearms dealer, and falsely certifying that he had never been convicted of a crime punishable by imprisonment for more than one year, 18 U.S.C. § 922(a)(6); receiving firearms transported in interstate commerce having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, *id.* § 922(h)(1); and conspiracy, *id.* § 371. During the plea proceedings, Bonfiglio admitted that in purchasing the weapons he used a false name; that he failed to state on the firearms form that he "had a felony"; that he knew he had been previously convicted of a felony;

and that he had conspired with co-defendant Eybergen to obtain the firearms. The district court accepted the plea, and the government moved to remand Bonfiglio as a danger to the community. In opposition to the government's motion, Bonfiglio's counsel suggested, without seeking to withdraw the guilty plea, that Bonfiglio used the name "Goodson" openly in his business dealings and merely as an anglicization of his true name, and that Bonfiglio had previously obtained a legal opinion that his escape conviction did not make him a predicate felon under New York state law. The district court continued bail until sentencing.

On the date set for sentencing, Bonfiglio appeared with new counsel, who sought an adjournment on the ground that at the time of the predicate escape Bonfiglio was being treated under the Federal Juvenile Delinquency Act. The district court denied the request, holding that under *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the validity of the escape conviction did not affect Bonfiglio's status as a convicted felon at the time he completed the firearms form. Defense counsel then moved to withdraw the guilty plea, on the ground that it was involuntary. The district court denied this motion and sentenced Bonfiglio. A post-sentence hearing was held on Bonfiglio's claim that his plea was involuntary, and the claim was rejected.

On direct appeal, this Court affirmed the conviction by summary order. We held that Bonfiglio's claim with respect to the withdrawal of his plea amounted to no more than an assertion that he admitted guilty when he was in fact innocent, a claim that is insufficient to justify a withdrawal of a guilty plea. *United States v. Bonfiglio*, 672 F.2d 901 (unpublished opinion) (2d Cir.1981) (citing *United States v. Saft*, 558 F.2d 1073, 1082 & n. 11 (2d Cir.1977); *United States v. Smith*, 407 F.2d 33, 35 (2d Cir.1969)). We noted further that

---

1. Venue was established in the Southern District of New York because the transactions were completed in Port Chester, N.Y. Bonfiglio filled out federal firearms forms and received the weapons there.

Bonfiglio raised a claim [2] that he was not a previously-convicted felon, because at the time of the predicate offense he was being treated as a juvenile and therefore was subject only to a charge of violating 18 U.S.C. section 751(b), a misdemeanor. We held that this claim provided no valid ground for appeal, since under *Lewis*, one charged with federal firearms violations cannot litigate the validity of the predicate conviction in the firearms case. *United States v. Bonfiglio*, 672 F.2d 901 (unpublished opinion) (2d Cir.1981).

Thereafter, Bonfiglio petitioned for a writ of error coram nobis in the District Court for the District of Columbia, seeking modification of his felony escape conviction on the ground that he could properly only have been charged with a misdemeanor. On October 20, 1983, William B. Bryant, *Judge*, of the D.C. District granted the writ and modified the conviction to a misdemeanor, effective February 6, 1970, nunc pro tunc.

Bonfiglio then filed the subject petition for a writ of habeas corpus, under 28 U.S.C. section 2255. After hearing argument, Judge Broderick granted the petition and vacated Bonfiglio's firearms conviction on the ground that, pursuant to Judge Bryant's nunc pro tunc order, Bonfiglio was not a convicted felon at the time he filled out the firearms form and received the weapons.

### DISCUSSION

The government's chief contention on appeal is that the district court's grant of Bonfiglio's habeas petition runs counter to the decisions of the Supreme Court in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), and *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), and the intent of Congress in promulgating

the federal gun control laws, as articulated in those cases. We agree, and turn therefore to an analysis of those decisions.

In *Lewis*, the Court held that a constitutionally infirm felony conviction could be used by the government as the predicate for a federal firearms offense.[3] The Court described the statutory language as "sweeping," *id.* 445 U.S. at 60, 100 S.Ct. at 918 and pointed out that "[n]o exception . . . is made for a person whose outstanding felony conviction ultimately might turn out to be invalid *for any reason." Id.* at 62, 100 S.Ct. at 919 (emphasis added). "There is no indication of any intent [on the part of Congress] to require the Government to prove the validity of the predicate conviction." *Id.* at 63, 100 S.Ct. at 920. In addition, the Court noted that section 922(h)(1) imposes "a disability not only on a convicted felon but also on a person under a felony indictment, even if that person subsequently is acquitted of the felony charge." *Id.* at 64, 100 S.Ct. at 920. After pointing out that the gun control laws provide a convicted felon with possibilities for relief, including a pardon expressly permitting him to possess a firearm, the consent of the Secretary of the Treasury, or a successful challenge to the predicate conviction before obtaining a weapon, the Court concluded that "Congress clearly intended that the defendant clear his status *before* obtaining a firearm, thereby fulfilling Congress' purpose 'broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.' " *Id.* at 64–65, 100 S.Ct. at 920–21 (quoting *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976)).

■ We draw from *Lewis* the principle that a conviction for violating section 922(h)(1) is not subject to attack on the

---

**2.** The claim was raised apparently for the first time on appeal, although Bonfiglio's counsel made a related argument that Bonfiglio "should have been indicted as a minor" for the escape. No. S80 Cr. 643, Sentencing Minutes at 27 (S.D. N.Y. May 5, 1981).

**3.** *Lewis* involved a violation of 18 U.S.C. app. § 1202(a)(1), an offense markedly similar to 18 U.S.C. § 922(h)(1), at issue herein. *See Lewis*, 445 U.S. at 64, 100 S.Ct. at 920 ("[W]e detect little difference between Title IV [containing section 922] and Title VII [containing app. section 1202].").

ground that a predicate conviction is *subsequently* reversed, vacated or modified. Rather, as stated by the Court, it is up to the defendant to clear his status *before* buying a weapon. Three years later, in *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), the Court again emphasized the importance of appropriate action to lift a federal firearms disqualification. There, the chairman of the board of the respondent New Banner Institute, Inc., David Kennison, pleaded guilty in an Iowa state court to charges of carrying a concealed handgun. Pursuant to an Iowa statute, the state court deferred entry of a formal judgment and placed him on probation. At the completion of his probationary term, he was discharged and his record was expunged, also pursuant to an Iowa statute. Subsequently, the respondent applied for licenses to deal in firearms and ammunition. The licenses were granted, but upon discovery of Kennison's guilty plea in Iowa, they were revoked. The New Banner Institute sued. The Supreme Court held that the firearms disabilities imposed by section 922(g)(1) and (h)(1) applied to Kennison, and by virtue of section 923(d)(1)(B), the corporation was disqualified from holding the licenses for which it had applied. In so ruling, the Court held that Congress did not intend federal firearms disabilities to be tied to state law regarding postconviction actions, such as expungement. The Court noted also that "Congress carefully crafted a procedure for removing those disabilities in appropriate cases." 460 U.S. at 120, 103 S.Ct. at 995. The Court thus held that even though Kennison had his conviction expunged pursuant to state law before the corporation sought its license, he had not followed an appropriate procedure for lifting the federal firearms disability, and therefore he and the corporation he led were disqualified.

■ Applying these holdings to the case before us, we conclude that at the time he purchased the weapons, Bonfiglio was under the disability imposed by 18 U.S.C. section 922(h)(1). Bonfiglio did not follow the procedures suggested in *Lewis* and *Dickerson* for removing such a disability; rather, he stated on the firearms forms that he had not been convicted of a crime punishable by more than one year in prison. At the time he made this representation, the conviction remained outstanding— it was not until some two years after his firearms conviction that he secured the nunc pro tunc order modifying the predicate offense to a misdemeanor. Had he done so before purchasing the weapons, it is likely that he could have avoided any firearms disability. He did not, however, and it is this failure that brings his case within the ambit of *Lewis* and *Dickerson.* Similar reasoning has been employed by courts of appeals sitting in other Circuits. *E.g., United States v. McCroskey,* 681 F.2d 1152, 1153 (9th Cir.), *cert. denied,* 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 515 (1982); *United States v. MacGregor,* 617 F.2d 348, 349 (3d Cir.1980); *United States v. Graves,* 554 F.2d 65, 73 (3d Cir.1977).

Bonfiglio seeks to escape the impact of these cases by placing great weight upon the words "nunc pro tunc" in the D.C. District judge's order modifying his predicate conviction. This, he asserts, had the retroactive effect of altering his legal status at the time he purchased the guns, so that he in fact was not a convicted felon at that time, and made no false representation with respect to his prior offense. We disagree. Bonfiglio admitted in his plea allocution that he knew he "had a felony"; as indeed, at that time, he did. Any doubts he may have entertained on that score could, and should, have been resolved by the means noted in *Lewis* and *Dickerson,* e.g., by securing the modification of his conviction *before* purchasing weapons. "Although he may have fulfilled the conditions under which the district court ... could [modify] the conviction, he had yet to obtain a court order, just as Lewis has not yet secured a vacation of his underlying conviction." *McCroskey,* 681 F.2d at 1153. As the government points out, Judge Broderick's decision would invite persons having either a legitimate or spurious reason for vacating a prior conviction to purchase

firearms first, and later attempt to escape a federal firearms conviction through a post hoc modification of their criminal status. That is not what Congress intended. "The federal gun laws ... focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Lewis*, 445 U.S. at 67, 100 S.Ct. at 922. The words "nunc pro tunc" have no talismanic significance that can justify ignoring this legislative intent.

 At oral argument, this Court requested submissions from counsel on the question of whether Bonfiglio, in the event his conviction were affirmed, would be entitled to be resentenced. Having considered these submissions, we are persuaded that resentencing is not warranted here. In general, a defendant has the right to have his sentence reassessed if the sentencing judge relied upon a prior invalid conviction or materially false information when passing sentence. *See Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980); *United States v. Needles*, 472 F.2d 652, 657 (2d Cir.1973). If, however, there is no reasonable probability that the sentence was based upon "specific consideration of the previous [invalid] conviction," *Counts v. United States*, 527 F.2d 542, 544 (2d Cir.1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2632, 49 L.Ed.2d 377 (1976), the defendant is not entitled to resentencing. *See McGee v. United States*, 462 F.2d 243, 245–46 (2d Cir.1972). We conclude that mere knowledge on the part of the sentencing judge of a prior conviction that is invalidated after sentence is imposed does not warrant resentencing in the absence of evidence that the judge specifically relied upon the invalidated conviction.

It is clear that the sentencing judge in this case did not specifically rely upon Bonfiglio's prior conviction to enhance his sentence. Much of the court's time at sentencing was devoted to a colloquy regarding the effect of the alleged invalidity of Bonfiglio's predicate conviction. The district court, however, ruled that the firearms conviction would remain valid regardless of the validity of the predicate conviction, and then pronounced sentence. As we have seen, that ruling was correct. Accordingly, Bonfiglio's argument that the district court sentenced him on materially mistaken information is without force. While a predicate offense conceivably could impact upon sentencing, no showing of such impact has been made here. Resentencing in this case, therefore, is not warranted.

### CONCLUSION

The order of the district court is reversed and the cause is remanded to that court with instructions to reinstate Bonfiglio's conviction.